UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MICHIGAN
NORTHERN DIVISION

MARK WHITTAKER #248327,

    Plaintiff,

v.                                      Case No. 2:03-cv-43
                                              HON. R. ALLAN EDGAR

WILLIAM OVERTON, et al.,

    Defendants.
_____/

## REPORT AND RECOMMENDATION

Plaintiff Mark Whittaker #248327, a parolee and former inmate in the MDOC, filed this *pro se* civil rights action pursuant to 42 U.S.C. § 1983 against Defendants Director Michigan Department of Corrections (MDOC) William Overton and MDOC Deputy Director Richard E. Johnson. In addition, Plaintiff sues Warden Fabian LaVigne, Assistant Deputy Warden Jeff Woods, Inspector Ian McDonald, Deputy Warden Greg McQuiggin, Assistant Resident Unit Supervisor M. Johnson, Hearing Investigator K. Dalsky, Corrections Officer R. Headley, Corrections Officer J. Forrest, Corrections Officer J. Jenkings, Corrections Officer R. Heck, John Doe #1, and John Doe #2, all of whom were employed by the MDOC at the Chippewa Correctional Facility (URF) at the time the complaint was filed.

In his complaint, Plaintiff claims that on April 25, 2002, he filed a complaint against Corrections Officer Vansloten and Defendant Headley for mishandling his mail. Plaintiff contends that these two officers were observed re-opening and reading Plaintiff's mail after the security check had already been conducted. When confronted, they denied that they had engaged in such conduct.

On May 2, 2002, Defendant M. Johnson conducted an investigation into Plaintiff's complaint and found it to be without merit. Plaintiff was subsequently harassed by Corrections Officer Vansloten and Defendant Headley, but when he complained to Defendant M. Johnson, Plaintiff was told to ignore it. Plaintiff told Defendant M. Johnson that he could not ignore the harassment, and Defendant M. Johnson replied that Plaintiff was not in prison to police the conduct of corrections officers and that prisoners with that attitude came to no good. Plaintiff took this comment as a warning that he would be punished in some manner if he continued to complain.

Plaintiff alleges that on April 26, 2002, he filed a complaint against Corrections Officer Brown for calling him and his cell mate "two black assholes." On May 3, 2002, Corrections Officer Hill refused to turn off the television in the day room while Plaintiff and other prisoners were holding Muslim services. Plaintiff claims that when asked to turn off the television, Hill did nothing for approximately five minutes. When Plaintiff asked to see a sergeant, Hill ordered him to go his cell, claiming that Plaintiff had become confrontational and demanding. Plaintiff filed complaints against Officer Hill for harassment with the Michigan State Police and Sergeant Joseph E. Shier, who later referred the complaint to Internal Affairs.

Plaintiff states that on May 17, 2002, he filed a grievance against URF administration for staff corruption because of the practice of throwing out and dismissing complaints filed by inmates without a proper investigation. Plaintiff also filed a complaint against Defendants LaVigne, Woods and McQuiggin for being biased while addressing complaints filed by Plaintiff and other inmates. Plaintiff claims that he wrote numerous letters to Defendants LaVigne, Woods, McQuiggin and McDonald regarding the conduct of Defendants Headley, Jenkings and Heck, which included

name calling and referring to Plaintiff as a "terrorist" because of his leadership position in the Muslim religion. However, Plaintiff's complaints were never addressed.

On May 22, 2002, Plaintiff's cell was searched by Defendant Jenkings, who removed religious items and some drawings and pictures. Defendant Jenkings claimed that Plaintiff was a threat to security because he had arabic writing and "so-called anti-secret government pictures." Plaintiff told Defendant Jenkings that the issue of his property had been addressed previously and it had been determined that they were not a threat to security. However, Defendant Jenkings nonetheless took Plaintiff's property. Corrections Officer Hill and Defendants Headley and Heck threatened to make Plaintiff pay. The next day, when Plaintiff was returning from yard, Defendant Jenkings ordered Plaintiff to go to the TV room and for all the other inmates to lock up in their cells. Defendant Jenkings then searched Plaintiff's cell and removed more religious materials. Defendant Jenkings then came to the TV room and began cursing at Plaintiff. Defendant Jenkings threatened to "kick [Plaintiff's] ass" and told him to "go over there with them Muslims." Plaintiff claims that this incident was videotaped. Plaintiff filed a complaint on Defendant Jenkings for this conduct.

Plaintiff claims that Defendants Jenkings, Headley and Heck, as well as Officer Hill, threatened him on numerous occasions and warned him that his day was coming. In addition, Plaintiff was warned to stop teaching Muslims about the Illuminati and Freemasonry and to keep his political views to himself. On May 29, 2002, Plaintiff was elected as block representative. Defendant Jenkings threatened Plaintiff by telling him that he would make sure that Plaintiff did not have the position for long. Plaintiff reported this threat to Defendant M. Johnson and Assistant Resident Unit Manager Derry, but they ignored Plaintiff's complaints. Plaintiff contends that later

that day he was threatened by "afternoon shift," and was told that "no Muslim will ever run anything." Plaintiff filed a grievance.

On May 30, 2002, Plaintiff returned from yard to find that his cell had been torn up and his Qur'an had been thrown on the floor along with other religious and personal items. In addition, Plaintiff claims that his personal mail had been thrown in the trash. Plaintiff went to the officer's station and asked who had searched his cell. Defendant Headley asked Plaintiff what the problem was and Plaintiff told him that his property had been thrown all over the floor. Defendant Headley then responded in a sarcastic voice that he would never do such a thing. Plaintiff stated, "Oh so you did it, that's all I want to know." Plaintiff then began walking away, but Defendant Headley ordered Plaintiff to go into the day room. Plaintiff complied with this order and thirteen officers came running up to Plaintiff ordering him to put his hands behind his back. Plaintiff was then taken to segregation. Plaintiff later received a misconduct ticket written by Defendant Headley which claimed that Plaintiff had threatened to "bust [Defendant Headley] in the head." Defendant Forrest co-signed the misconduct as a witness. Plaintiff requested a hearing investigator and a review of the videotape. On May 31, 2002, Defendant Dalsky came to see Plaintiff and he again requested that the videotape be reviewed. Plaintiff was found guilty of the misconduct on June 5, 2002, after being told that there was no videotape of the event. Plaintiff subsequently wrote a letter to Defendant Dalsky asking about the videotape. Plaintiff claims that Defendant Dalsky admitted to having a copy of the tape and did not give a legitimate reason for not providing the tape to the hearing officer. Plaintiff claims that the conduct of Defendants Headley, Forrest and Dalsky violated his procedural due process rights.

On June 2, 2002, Plaintiff filed a complaint on Officer Croche and Sergeant Sistruck for refusing to give Plaintiff a non-pork meal after Plaintiff told them that he was Muslim. Plaintiff's request was refused. Plaintiff made numerous requests for his meal, and was finally threatened with a major misconduct if he didn't stop yelling out his door. Plaintiff claims that he filed a grievance and "won," but that the fact that he did not get his meal that day was ignored.

On July 25, 2002, Plaintiff received a letter from Internal Affairs stating that a thorough investigation had been conducted concerning Plaintiff's complaints about the handling of grievances at URF, and that they were found to be without merit. Plaintiff wrote to Defendants LaVigne, McDonald, Woods, and McQuiggin asking why he was not informed of the investigation. On August 25, 2002, Plaintiff received a letter from Patricia L. Caruso stating that she had asked Defendant LaVigne to respond to Plaintiff's concerns regarding the handling of his complaints against Defendant Headley. Plaintiff claims that his complaints were again ignored and that Caruso was misled into believing that Plaintiff's issues were resolved.

Plaintiff alleges that on July 26, 2002, he wrote to State Representative Patricia L. Birkholz, who forwarded Plaintiff's complaint to the Legislative Corrections Ombudsman, Clayton Burch. However, once again, Plaintiff's complaints went unresolved. On August 3, 2002, Defendant McDonald wrote Plaintiff a major misconduct for interference with administration of rules, claiming that Plaintiff was misleading the disciplinary system by filing false complaints against URF staff. On August 22, 2002, Plaintiff was found "not guilty" of the misconduct because the evidence showed that a thorough investigation was never conducted. Hearing Officer Peppler noticed that Internal Affairs was not provided with all the facts of the complaints filed by Plaintiff, nor were all the issues addressed.

Defendants LaVigne, McQuiggin, and Woods had Plaintiff placed on modified access to the grievance procedure without informing Plaintiff of the reason for this action. Plaintiff claims that he had requested grievance forms so that he could file grievances on Defendants Woods, McDonald and M. Johnson for their "intentional spoilation of evidence." However, Plaintiff's requests for grievance forms were ignored or denied by Grievance Coordinator Jeff Case. Consequently, Plaintiff requested a grievance form so that he could file a grievance on Jeff Case. Plaintiff states that Resident Unit Manager Mathers instructed him to send it directly to the warden's office. Plaintiff followed Mather's instructions and, as a result, received a 30 day extension of the modified access restriction. Plaintiff then kited the warden's office regarding this extension. Plaintiff received a response from Defendant Woods on September 3, 2002, stating that Defendant Woods had looked into Plaintiff's concerns and found that Plaintiff had sent a grievance directly to the grievance coordinator without approval, and that policy does not state that a written response is required by the grievance coordinator if a form is not given.

Plaintiff sent letters to prison officials requesting that he be released from segregation, where he had been confined since May 30, 2002. Defendant McQuiggin responded to Plaintiff's inquiries on September 23, 2002, stating that he had reviewed Plaintiff's file and decided not to consider Plaintiff for release from segregation until March of 2003. Plaintiff claims that Defendants' conduct violated his right to procedural due process, to be free from retaliation, and constituted an intentional infliction of emotional distress. For relief, Plaintiff requests compensatory and punitive damages, as well as declaratory and injunctive relief.

Plaintiff's complaint was originally filed on February 27, 2003, in the Eastern District of Michigan. The case was transferred to this court on March 5, 2003, and was dismissed pursuant

to the total exhaustion rule on May 7, 2003. Plaintiff's motion for relief from judgment was denied on October 30, 2003. On September 10, 2007, Plaintiff filed a motion seeking reinstatement of this action, which the court construed as a motion for reconsideration of the dismissal pursuant to the United States Supreme Court decision in *Jones v. Bock*, 127 S. Ct. 910 (2007). This motion was granted on October 31, 2007.

Presently before the Court are the Defendants' Motions to Dismiss, pursuant to Fed. R. Civ. P. 12(b)(6) (docket #37 and #41), and Plaintiff's Motion for Partial Summary Judgment, pursuant to Fed. R. Civ. P. 56 (docket #46). The parties have filed responses and the matter is ready for decision. A motion to dismiss under Rule 12(b)(6) tests the sufficiency of the pleading, requiring the court to determine whether the plaintiff would be entitled to relief if everything alleged in the complaint is true. *Mayer v. Mylod*, 988 F.2d 635, 638 (6th Cir. 1993). "[A] complaint should not be dismissed for failure to state a claim unless it appears beyond doubt that the plaintiff can prove no set of facts in support of its claim which would entitle [the plaintiff] to relief." *Conley v. Gibson*, 355 U.S. 41, 45-46 (1957). The court must construe the complaint in the light most favorable to plaintiff. *Scheuer v. Rhodes*, 416 U.S. 232, 236 (1974). A judge may not dismiss the complaint simply because he disbelieves the complaint's factual allegations. *Conley*, 355 U.S. at 47.

Generally, a complaint need only give "fair notice of what the plaintiff's claim is and the grounds upon which it rests." *In re Delorean Motor Co. v. Weitzman*, 991 F.2d 1236, 1240 (6th Cir. 1993) (*quoting Conley*, 355 U.S. at 47). The fundamental purpose of pleadings under the Federal Rules of Civil Procedure is to give adequate notice to the parties of each side's claims and to allow cases to be decided on the merits after an adequate development of the facts. *Mayer*, 355 U.S. at 638. While this standard is decidedly liberal, it requires more than the bare assertion of legal

conclusions. *Delorean*, 991 F.2d at 1240. "In practice, a complaint must contain either direct or inferential allegations respecting all the material elements to sustain a recovery under some viable legal theory." *Id.* (internal quote omitted).

       Summary judgment is appropriate only if the moving party establishes that there is no genuine issue of material fact for trial and that he is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-323 (1986). If the movant carries the burden of showing there is an absence of evidence to support a claim or defense, then the party opposing the motion must demonstrate by affidavits, depositions, answers to interrogatories, and admissions on file, that there is a genuine issue of material fact for trial. *Id.* at 324-25. The nonmoving party cannot rest on its pleadings but must present "specific facts showing that there is a genuine issue for trial." *Id.* at 324 (quoting Fed. R. Civ. P. 56(e)). The evidence must be viewed in the light most favorable to the nonmoving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251-52 (1986). Thus, any direct evidence offered by the plaintiff in response to a summary judgment motion must be accepted as true. *Muhammad v. Close*, 379 F.3d 413, 416 (6th Cir. 2004) (*citing Adams v. Metiva*, 31 F.3d 375, 382 (6th Cir. 1994)). However, a mere scintilla of evidence in support of the nonmovant's position will be insufficient. *Anderson*, 477 U.S. at 251-52. Ultimately, the court must determine whether there is sufficient "evidence on which the jury could reasonably find for the plaintiff." *Id.* at 252. *See also Leahy v. Trans Jones, Inc.*, 996 F.2d 136, 139 (6th Cir. 1993) (single affidavit, in presence of other evidence to the contrary, failed to present genuine issue of fact); *cf. Moore, Owen, Thomas & Co. v. Coffey*, 992 F.2d 1439, 1448 (6th Cir. 1993) (single affidavit concerning state of mind created factual issue).

In their motions to dismiss (docket #37 and #41), Defendants assert that Plaintiff's claims are barred by the applicable statute of limitations. Defendants note that Plaintiff filed his complaint on February 27, 2003, asserting alleged constitutional violations which occurred on June 5, 2002, and August 22, 2002. Defendants contend that the statute of limitations was not tolled between the date that Plaintiff's complaint was dismissed for lack of exhaustion, May 7, 2003, and the date it was reinstated, October 31, 2007, so that the statute of limitations had run on his claims by the time the complaint was reinstated. Defendants rely on *Carlton v. Smith*, 2007 WL 3102076, No. 1:07-cv-398 (W.D. Mich. Oct. 22, 2007), to support their assertion.

In *Carlton*, the plaintiff timely filed a civil rights action asserting his claims, which was dismissed without prejudice pursuant to the total exhaustion rule on April 25, 2005. *See Carlton v. Smith*, No. 1:04-cv-708 (W.D. Mich. Apr. 25, 2005). Following the Supreme Court's decision in *Jones v. Bock*, Plaintiff filed a new civil rights action asserting the same claims as those raised in the previously dismissed Case No. 1:04-cv-708. In finding that the second action was barred by the statute of limitations, the court stated:

> After Plaintiff's complaint was dismissed without prejudice because it included both exhausted and unexhausted claims, Plaintiff did not appeal the decision, he did not re-file the complaint with only the exhausted claims, and he does not indicate that he attempted to exhaust the unexhausted claims. Plaintiff has not shown diligence in pursuing his rights. Neither has he shown that any other factors weigh in favor of tolling.

*Carlton v. Smith*, 2007 WL 3102076, slip op. 2.

However, the situation in this case is distinct from that in *Carlton* because Plaintiff here did not file a new action. Rather, Plaintiff filed a motion for reconsideration, which was granted by this court. Unlike *Carlton*, this case involves one action, which was closed and has now been

reopened. Therefore, the date of filing in this case is unchanged, February 27, 2003. As noted by Defendants, this date is within the three year statute of limitations. Therefore, Defendants' motions to dismiss are properly denied.

In his motion for summary judgment, Plaintiff reiterates the allegations set forth in his complaint and states that he is entitled to summary judgment because the undisputed facts establish that Defendants Dalksy, McDonald, Headly, Forrest, McQuiggin, and LaVigne intentionally neglected his rights and retaliated against him. However, the exhibits to Plaintiff's brief in support of the motion reveal that his claims had been investigated by prison officials and were found to lack merit. Therefore, there appears to be an issue of fact with regard to Plaintiff's claims. Accordingly, the undersigned recommends denial of Plaintiff's motion.

In summary, in the opinion of the undersigned, Defendants' motions for dismissal (docket #37 and #41) and Plaintiff's motion for summary judgment (docket #46) are properly denied.

NOTICE TO PARTIES: Objections to this Report and Recommendation must be served on opposing parties and filed with the Clerk of the Court within ten (10) days of receipt of this Report and Recommendation. 28 U.S.C. § 636(b)(1)(C); Fed. R. Civ. P. 72(b); W.D. Mich. LCivR 72.3(b). Failure to file timely objections constitutes a waiver of any further right to appeal. *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981). *See also Thomas v. Arn*, 474 U.S. 140 (1985).

/s/ Timothy P. Greeley
TIMOTHY P. GREELEY
UNITED STATES MAGISTRATE JUDGE

Dated: July 30, 2008